[Crim. No. 2072. Third Dist. June 5, 1948.]

THE PEOPLE, Respondent, v. WILLIE FISHER, Appellant.

C. Ray Robinson and Willard B. Treadwell for Appellant.

Fred N. Howser, Attorney General, and Doris Maier, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendant was charged by two counts of an information filed in Merced County with separate assaults upon different named individuals with a deadly weapon, to wit, a knife. Both charges grew out of the same affray. The first count charged him with assaulting William Solomon. The second count charged an assault upon Columbus Glynn. All parties concerned in the affray were Negroes. The defendant was tried with a jury composed entirely of Negroes. The jury found the defendant guilty of the crime alleged in the first count, and not guilty of the second charge. Judgment was rendered accordingly. From the judgment on the first count the defendant has appealed.

It is contended that the judgment of conviction is not supported by the evidence; that the testimony of certain prosecuting witnesses is inherently improbable; that the verdict is unlawful and void because a statement which was written therein by the jury was eliminated in open court by unanimous consent of the jury to render the verdict more certain and to make it conform to the jurors' declared intention; that the district attorney was guilty of prejudicial misconduct in his argument to the jury, and that the court erred in refusing to give a certain instruction which was offered by the defendant.

The prosecuting witnesses, William Solomon, Columbus Glynn and Leo Norris met at the Casimira Beer Tavern in South Dos Palos about 7 o'clock p. m., November 21, 1947. They drank together one or more glasses of beer. Solomon then went home. About 8 o'clock that night, after purchasing a can of kerosene, he returned to the saloon where he again met his companions and they each drank several glasses of beer. The defendant arrived about 8:45, and parked his car in front of the place. He entered the saloon, but did not talk with the prosecuting witnesses inside the building. About 9 o'clock the prosecuting witnesses left the tavern to go home. Mr. Glynn walked around back of the building to a lavatory. Solomon and Norris walked about 50 feet toward their home and then stood there talking while they waited for

Glynn to return. According to the testimony of Solomon, while they stood there, the defendant came out and, approaching them, said "all of you guys is framing up on me." They denied that statement and a controversy followed about that charge. The defendant testified that he did not follow them, but that, on the contrary, they intercepted and attacked him as he came from the saloon and proceeded toward his parked car.

It appears that three or four weeks previously the defendant attacked Glynn in a gambling joint and knocked him down. Neither Solomon nor Norris was then present. When the defendant was asked at the trial about that former affray, he first denied having had previous trouble with any of the prosecuting witnesses. But on cross-examination he admitted that he knocked Glynn down in a gambling place.

Regarding the assault for which the defendant was being tried, Mr. Solomon testified that while he and Norris were waiting for Glynn to return from the lavatory, the defendant came out of the tavern and approached them, cursing them and charging them with "framing" him; that he saw the defendant take out his knife and "open it" as he came toward them. Glynn had not then returned. Solomon said he became frightened, and "backed off" a distance of 10 or 15 feet; that Mr. Norris stepped between him and the defendant and remonstrated with the defendant against his threatened assault. Both Solomon and Norris said that no one struck the defendant or threatened to attack him before his assault. None of the prosecuting witnesses was then armed with a knife or with any other weapon. The defendant, nevertheless, rushed at Solomon with his knife. As he struck at Solomon the latter grabbed the knife and received a slight cut on one finger. The defendant then attacked Solomon again and cut an incision with the knife in his left side some 5 or 6 inches in length. Solomon was later taken to the hospital for medical care and stitches were taken to close the wound.

There is a conflict between the testimony of Solomon and Norris as to whether Glynn had actually returned before the defendant assaulted and cut Solomon in his side. The attack upon Glynn occurred later. The testimony of Norris otherwise substantially corroborated Solomon's evidence. Solomon testified that Glynn returned while he was engaged in the affray with the defendant. He said that it was after he was cut in the side that Glynn returned and then ran some dis-

tance and picked up a piece of 2 x 4 timber which he threw at the defendant. He said that Glynn later picked up a bottle and threw it at the defendant, and that the defendant then ran after Glynn and cut him in the back with the knife. The last-mentioned cutting of Glynn was the foundation of the second count of the information, of which the jury found the defendant not guilty.

Glynn testified that when he and his companions first came from the tavern, he "went to the lavatory." He said that Solomon and Norris waited for him in front of the building, and that "almost immediately after" he "got back the fight started." Glynn was not clear regarding the circumstances of the affray. He did say that all three of them were standing and talking together when the defendant "came up and said we was framing on him." He said the defendant said "I will kill all three of you and get rid of you now." He added, "I don't know what time or when he hit Solomon with his knife, but I turned my back to walk away and I have a scar in my back on this left side." When he was asked who received the first stab, he replied, "As far as I know, Solomon did." He said nothing about procuring the 2 x 4 timber or the bottle, and throwing them at the defendant.

The defendant claimed that he used his knife in necessary self-defense. He said that when he came out of the saloon, Norris ran between him and his car and that, "without any word of warning," Solomon hit him with a 2 x 4 timber and knocked him down, and that Glynn hit him in the head with a pocket knife. He said "I struck at Glynn with the knife because he struck me." When he was asked who else he struck with the knife, he replied, "Well, Solomon."

The evidence of the opposing parties is absolutely conflicting. There are some inconsistencies of testimony on both sides. If the defendant's story is true, of course he should have been acquitted of both charges. But all prosecuting witnesses testified positively that the defendant was the aggressor, and that he came to them and assaulted them with his knife, without any threats or provocation on their part; that none of them was armed with a knife or other weapon, and that none of them first struck him. His former conflict with Glynn might account for his enmity toward them. It was the sole province of the jury to determine who was the aggressor in that affray, and to decide the credibility of the witnesses. We are of the opinion we may not interfere with

that province of the jury, under the circumstances of this case. The evidence is adequate to support the verdict and judgment of conviction of the first charge of the information. It is not necessary to discuss the evidence regarding the second count of the information, since the verdict was favorable to the defendant upon that charge. Both Solomon and Norris admitted they did not see the defendant cut Glynn.

■ Nor may we hold that the evidence of the three prosecuting witnesses, or of any one of them, is inherently improbable. Evidently the jury believed their stories of the defendant's attack upon Solomon, and were able to satisfactorily reconcile any inconsistencies which may exist in any of their testimony. It has been repeatedly held that a reviewing court may not reverse a judgment of conviction in a criminal case on the ground that the testimony is inherently improbable unless it is so apparently false and unbelievable that reasonable minds may not differ in that regard. (*People* v. *Mitchell,* 48 Cal.App.2d 422, 429 [119 P.2d 1000]; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Jefferson,* 31 Cal.App.2d 562, 566 [88 P.2d 238]; *People* v. *Stangler,* 18 Cal.2d 688, 692 [117 P.2d 321].) In the case last cited, the court said:

". . . [A]n appellate tribunal cannot disturb the findings of the triers of fact unless it be made clearly to appear that upon no hypothesis is there sufficient substantial evidence, circumstantial or otherwise, to support the conclusion reached in the lower court."

So, also, the Supreme Court said, in the recent case of *People* v. *Eggers,* 30 Cal.2d 676, at page 685 [185 P.2d 1], regarding the prohibition against a reviewing court interfering with the exclusive province of the trial jury or court in their determination of the weight or sufficiency of the evidence or of the credibility of witnesses, that:

". . . This court may not, in reviewing the evidence, substitute its judgment for that of the jury, and, where there is substantial evidence in support of the jury's verdict, its determination must be upheld. (Citing authorities.) Conversely, to justify the reversal of a judgment of conviction, the record must clearly show that the evidence could not be interpreted as supporting the verdict. (*People* v. *Tedesco,* 1 Cal.2d 211, 219 [34 P.2d 467].)"

■ The form of the verdict which was rendered by the jury is not uncertain or invalid. It clearly found the de-

fendant ''Guilty as charged in Count One of the Information.'' The verdict was returned upon one of the forms supplied by the court. It was duly dated and signed by the foreman. To the language above quoted the jury had added, ''We the jury find Willie Fisher guilty of the felony charge.'' In open court, before the verdict was declared, the judge looked at the verdict and then called attention to the last quoted written statement, and asked the jury: ''What did you decide that he was guilty on Count One or Two or guilty as to Count One and not Count Two of the information?'' A juror replied: ''We decided Guilty on Count One.'' The judge then said, ''Well, *with permission of counsel and the acquiescence of the jury,* I will have you erase the words, 'We the jury find Willie Fisher guilty of a felony charge.' '' That was done by the jury. The court then asked, ''That meets with the unanimous approval of the jurors, does it?'' The jurors nodded affirmatively. The verdict was not otherwise changed. The court then directed the clerk to enter the verdict as it appears in the record, which reads:

''We the jury in the above-entitled cause, find the Defendant, Willie Fisher Guilty as charged in Count One of the Information and Not Guilty as charged in Count Two of the Information.''

After the verdict was entered in the minutes of the court, it was read to the jury, and they were asked, ''Is that your verdict?'' to which they unanimously nodded approval. The attorney for the defendant made no objection to the erasure of the surplusage matter or to the procedure in court. He merely asked that the jury be polled. The jury was thereupon polled and each juror asserted that it was his verdict as recorded.

It will be observed that the verdict originally returned by the jury, in addition to the erased language, specifically found that the defendant was ''Guilty as charged in Count One of the Information and Not Guilty as charged in Count Two of the Information.'' The erased language was surplusage. The added statement that the defendant was ''guilty of the felony charge'' neither changed nor rendered uncertain the intention of the jury to find him guilty of the offense charged in count one of the information. All that the court did was, by the unanimous consent of the jurors and counsel, to direct the jury to eliminate the unnecessary language. That was done by the jury and without objection on the part of the defendant or his attorney. It was not necessary for

the jury to retire to the jury room for that purpose, under the circumstances of this case.

The verdict, as originally presented to the court, definitely found the defendant guilty of count one of the information. No particular form of verdict is required, so long as it clearly indicates the intention of the jury to find the defendant guilty of the identical offense with which he is charged. It is not necessary that the verdict shall specify in terms the nature of the offense. It is sufficient if it finds him guilty by reference to a specified count contained in the information. That form of verdict has received uniform approval of our courts. (*People* v. *Mercado,* 59 Cal.App. 69 [209 P. 1035]; *People* v. *Flohr,* 30 Cal.App.2d 576, 581 [86 P.2d 862]; *People* v. *Cassella,* 58 Cal.App. 547 [209 P. 40]; 8 Cal.Jur. § 430, p. 400.) In the text last cited, which is supported by numerous California authorities, it is said:

"Although a verdict be informal, it is sufficient if the intention to convict the defendant of the crime charged or of a crime necessarily included therein be unmistakably expressed. . . . In giving effect to the manifest intention of the jury, matters of surplusage and clerical errors will be disregarded."

The court had authority, while the jury was before it, to see that the verdict expressed the clear intention of the jury, and that any doubtful or insufficient statements contained therein should be corrected by the jury before it was finally pronounced or became a part of the records of the trial. In *People* v. *Jenkins,* 56 Cal. 4, at page 7, it is said in that regard:

"It is the duty of a Court to look after the form and substance of a verdict, so as to prevent a doubtful or insufficient finding from passing into the records of the Court; for that purpose the Court can, at any time while the jury are before it, and under its control, see that it is amended in form so as to meet the requirements of the law. *The informality in the case in hand was in a mere matter of form, which the Court of its own motion might have ordered to be corrected, instead of directing the jury to retire for that purpose.*" (Italics added.)

Moreover, the defendant waived his objection to the modification of the original verdict, under the circumstances of this case. A defendant may not, for the first time on appeal object to the form of a verdict, if it is susceptible of a con-

struction which may have a lawful and relevant application and is determinative of the issues involved. (*People* v. *McKinney*, 71 Cal.App.2d 5, 15 [161 P.2d 957]; *Johnson* v. *Visher*, 96 Cal. 310, 314 [31 P. 106].) When informalities in a verdict amount to mere matters of form, the court, instead of directing the jury to retire for that purpose, may of its own motion order the verdict to be corrected. (8 Cal. Jur. § 440, p. 412.)

 The district attorney is charged with prejudicial misconduct in his argument to the jury. The defendant is a Negro. He was tried by a jury consisting entirely of Negroes. The district attorney, in his opening argument, told the jury that "this is the first occasion in the history of our national jurisprudence where a member of your own race has gone to trial before a jury of his peers composed entirely of members of his own race." After speaking generally of racial prejudice, and asserting, in effect, that racial prejudice could not be charged in this case, he concluded by saying to the jury he knew that, "even though a member of your own race be involved, you will meet your obligations and your duties courageously and discharge them in the same way and that evenhanded justice will be done." The defendant argues that the statement of the district attorney amounted to a warning to the jury that if they wanted to avoid public criticism for favoring a defendant belonging to their own race they should convict him of the charges. Evidently the jurors were not prompted, on that account, to render their verdict, for they found him *not guilty* of count two of the information, although they did convict him of the first count. Even though some of the language employed may be susceptible of the construction placed upon it by the defendant, it does not affirmatively appear that the defendant was prejudiced thereby. The district attorney closed that phase of his statement by saying the jurors should perform their duty courageously and render "evenhanded justice." They were definitely instructed that they must render their verdict solely on the evidence adduced at the trial.

We do not approve of the language used by the district attorney with regard to race prejudice or the public interest in that particular trial. That language should not have been used in the argument. But we are of the opinion it does not appear, as a matter of law, that it was prejudicial to the defendant.

 Moreover, no objection was made to those statements

at the trial. The court was not asked to direct the jury to disregard them. The objection to that language was made by the defendant for the first time on appeal. It has been repeatedly held that a defendant must ordinarily object to alleged prejudicial statements of a prosecuting officer in his argument to the jury, and request the court to instruct the jury to disregard them, before they may be assigned, on appeal, as reversible error. (*People* v. *Codina,* 30 Cal.2d 356, 362 [181 P.2d 881]; *People* v. *Knott,* 15 Cal.2d 628, 633 [104 P.2d 33]; *People* v. *Ward,* 40 Cal.App.2d 143, 150 [104 P.2d 537]; *People* v. *Swenson,* 28 Cal.App.2d 636, 641 [83 P.2d 70]; *Rogers* v. *Foppiano,* 23 Cal.App.2d 87, 95 [72 P.2d 239]; *People* v. *DuBois,* 16 Cal.App.2d 81, 87 [60 P.2d 190]; *People* v. *Chilcott,* 18 Cal.App.2d 583, 588 [64 P.2d 450]; *People* v. *Dunlop,* 79 Cal.App.2d 207, 211 [179 P.2d 658]; 24 Cal.Jur. § 29, p. 746.) In the Codina case, *supra,* the Supreme Court said:

''Moreover, defendant made no attempt to correct these alleged improprieties at the trial; and it is the general rule that any objectionable remarks or argument of the prosecuting attorney must be opposed at the time they are made, and the court requested to admonish the jury concerning them, before they can be made a ground for appeal.''

The only exception to the foregoing rule is that when it appears that the alleged prejudicial statements are of such a nature that an admonition to the jury to disregard them would be useless and ineffectual, they may then be raised on appeal without first requesting the court to charge the jury to disregard them.

We are of the opinion the appellant waived his objection to the alleged prejudicial statements of the district attorney by failing to criticise them at the trial and by neglecting to ask the court to instruct the jury to disregard them.

Finally, the appellant contends that the court's refusal to give to the jury one instruction offered by him is reversible error. We think not. It contains an erroneous statement justifying the use of excessive force in self-defense *based on the defendant's belief* that it was necessary to prevent bodily harm, rather than upon circumstances which would justify *a reasonable person* in so doing. The rejected instruction was also fully covered by others which were given to the jury. The instruction reads:

''It is proper for you to consider who made the first attack,

and, if the defendant was required to act at once, in the excitement and heat of the affray, he could not be expected to exercise that nice discretion and accurate judgment which a jury, by a careful sifting of the testimony of all the witnesses, aided by the argument of the counsel and charge of the Court, would be able to do; and, therefore, his conclusion, though he acted honestly and in good faith, might not be perfectly correct and just. If you find that the defendant did use more force than was actually necessary for self-protection, but also find that he honestly believed at the time that he was using only so much force as was necessary for his own defense, and if he acted honestly and in good faith in coming to that conclusion, and if such a belief was reasonable on his part, under the circumstances surrounding him at that time, and the situation as it appeared to him then he would not be guilty of an assault by reason of the use of such excessive force.''

The foregoing instruction was properly refused.

The rule of law which justifies the use of excessive force in self-defense is based on circumstances which would warrant ''a reasonable person in a similar situation'' to believe that it was necessary in order to prevent bodily harm at the hands of his assailant, and not what the defendant, himself, ''in the excitement and heat of the affray,'' might honestly think was necessary. (*People* v. *Semikoff*, 137 Cal.App. 373, 376 [30 P.2d 560]; *People* v. *Albori*, 97 Cal.App. 537, 544 [275 P. 1017]; *Lowry* v. *Standard Oil Co.*, 54 Cal.App.2d 782, 790 [130 P.2d 1]; *People* v. *Moody*, 62 Cal.App.2d 18, 22 [143 P.2d 978].) In the Albori case, *supra*, the court, at page 544, approved an instruction which reads in part as follows:

''A person may . . . believe that his apprehension is based on sufficient cause and supported by reasonable grounds . . . as they present themselves to him. If, however, he acts on these appearances, he does so at his peril, because the law leaves it to no man to be the exclusive judge of the reasonableness of the appearances upon which he acts, but prescribes a standard of its own, which is not only did the person acting on appearances himself believe he was in deadly peril of his life or of receiving great bodily harm, *but would a reasonable man, situated as the defendant was, seeing what he saw, and knowing what he knew, be justified in believing himself in danger?*''

In the case before us the previously quoted rejected instruction was fully covered by other instructions which were given to the jury. The court instructed the jury that one who

is assaulted by another has a right to stand his ground and use "all force and means" of defending himself "which he believes to be reasonably necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent."

The jury was also instructed that the defendant, if attacked, was not required to retreat, but could stand his ground or even pursue his assailant, as a means of self-defense, "until he has secured himself from danger, . . . even though he might more easily have gained safety by withdrawing from the scene," if it would appear to a reasonable person in the same situation "to be reasonably and apparently necessary."

The jury was fully and fairly instructed on all the necessary elements of the offense of which he was convicted.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.