[Crim. No. 2582. First Dist., Div. Two. Apr. 7, 1950.]

THE PEOPLE, Respondent, v. THOMAS L. GLENN, Appellant.

Thomas L. Glenn, in pro. per., and Ivan C. Sperbeck for Appellant.

Fred N. Howser, Attorney General, Clarence A. Linn, Deputy Attorney General, J. F. Coakley, District Attorney, Cecil Mosbacher and Laurence E. Dayton, Assistant District Attorneys, for Respondent.

NOURSE, J.—Defendant was found guilty by a jury on 12 counts of grand theft and appeals from the judgments of conviction entered thereon and from the orders denying a

new trial. We will first consider the contention that the verdicts are not supported by the evidence.

■ *Count 1.* Theft of $900 on July 10, 1946, given defendant by his client Reilly in behalf of his client Rasmussen. The latter was a contractor who was in debt when Reilly associated with him. Defendant acted as attorney with respect to both the debts and the association. Because of continuing pressure of Rasmussen's creditors it was agreed that Reilly would take the business in his name and as a matter of form buy Rasmussen out. Most pressing debts were $1,100 to Internal Revenue and $900 state unemployment insurance. Reilly first agreed to pay $1,100 to be used on the payment of those debts, which amount he paid to defendant in June, 1946. On July 10, 1946, he gave defendant a check for $900 more saying that Rasmussen had that much more coming to him and that it was to be used for the same purpose. In August defendant paid $1,100 to the Internal Revenue; the state unemployment insurance was never paid. Defendant contends that he was entitled to keep the $900 as fee; that the money Reilly paid was intended for Rasmussen, that Rasmussen knew he owed defendant a fee and did not instruct him to use the $900 for creditors or demand return to himself, whereas Reilly could not restrict the use of the money he owed to Rasmussen; that defendant reported the $900 as taxable income. However respondent quotes testimony of Rasmussen and Reilly showing that defendant himself informed Rasmussen that the $900 due the state had to be paid immediately and advised him to get it from Reilly and that Reilly told defendant that he brought the defendant the $900 for payment of these taxes with the knowledge of Rasmussen. It is argued that this evidence shows a binding understanding between defendant, Rasmussen and Reilly to use the $900 only for the necessary payment to the state, and the evidence fully supports that theory.

■ *Counts 2 to 8.* These were closely interrelated. They all relate to thefts from defendant's client Piotti. In 1947 Piotti, a tavern owner, was deeply in debt and became ill; he therefore offered his tavern for sale. One of his creditors, Harry Davis brought defendant to his home. According to the evidence of the People, it was agreed that defendant would act as escrow holder for the sale, pay off the creditors and after everything had been paid take his fee which "wouldn't be too much" and give Piotti what was left. He induced Piotti, who was ill, to sign a power of attorney in the name

of Mrs. Piotti. Mrs. Piotti concluded a sale of the tavern for $27,000 and a check of $26,500 dated June 2, 1947, was turned over to defendant to be placed in escrow for the purpose of paying the creditors. On June 3, 1947, defendant opened an account for himself as trustee (not mentioning a specific trustor) in which the $26,500 was deposited. A copy of the ledgersheet of that account shows that from June 3 to October 3, 1947, the whole deposit was withdrawn (there was even a small overdraft) and no deposit except the original one was made until that date. Some of the withdrawals were concededly legitimate but the following ones are made the basis for the grand theft charges. Immediately on June 3, 1947, defendant withdrew $2,500 as his fee, (count 2) on June 11, $1,000 (count 3) and on August 18 again $1,000 (count 7), all as fees. On July 8, 1947, he gave a check for $1,500 on the trust account to refund a deposit to that amount made in May, 1947, on the purchase price of real property belonging to another client of defendant, which amount defendant had then deposited in his personal account (count 4). On July 24, 1947, he gave a check of $300 on the trust account to pay off the same amount which he had received on November 19, 1946, on a judgment recovered for another client which amount he had then deposited in his personal account (count 5). On August 4, 1947, he gave a check of $500 as a loan to Betty Nelson, who had engaged him as an attorney with respect to the settlement of the liabilities and the termination of a joint tenancy interest of her husband who had been killed in an accident a week before; that check was paid out of the Piotti trust account (count 6). On September 2, 1947, he gave to Mrs. Murray, a client, a check of $3,500 on the same trust account as second party payment on an amount of $6,700 he had received for her in April, 1947, from the sale of real property, and which amount he had not deposited in the trust account. Piotti stood in no relation whatever to any of the four clients of defendant to whom these payments were made. During the period of these seven withdrawals, undisputed tax debts in large amounts remained unpaid; the Collector of Internal Revenue had served on defendant a levy for taxes due from Piotti. (Debts totaling $7,000 in which Davis, who introduced defendant to Piotti, had an interest were paid in full.) On July 25, 1947, Mrs. Piotti made written demand for an accounting of the escrow money and instructed defendant to deliver all funds and

papers to her attorney Bernard Sheridan. Notwithstanding continued pressure by that attorney nothing was ever paid back. Defendant claimed $5,000 as fee. In a return to the levy of the Collector of Internal Revenue of February 28, 1948, defendant stated that he had $9,899 on hand after deduction of all payments made for Piotti and $5,000 fees. This amount was not paid to the collector. For the first time at the trial defendant testified that in March, 1948, he had returned it to Piotti in cash taken from defendant's safe where he had put it in accordance with alleged instructions of Piotti to keep it from the hands of the creditors. He claimed that he had the receipt in the files which the district attorney took from his office. All this is denied by Piotti and is in conflict with prior statements of defendant. Defendant argues that he testified to an agreement entitling him expressly to a fee of $5,000, but even if this was not accepted (the Piottis denied it) he was entitled to a fee to come from the escrow amount and there was expert evidence that $5,000 was a reasonable fee for the work he did. Respondent points out the contradictions and impossibilities in defendant's evidence as to his services—among other things he testified to conferences in the year 1947 in behalf of Piotti with Frank Hogan, one time president of the American Bar Association, who died in 1944—and to the fact that much of the alleged service was performed, if at all, after his authority had been revoked. Defendant maintains that differences as to reasonableness of fees do not constitute theft. With respect to the payments to other clients from the trust account, defendant argues that these do not constitute theft because there was no proof that the money in that account belonged to Piotti as the account was not opened as an account for that specific trust but as containing money from clients in general. Respondent points to the fact that at the time the payments were made there had been no deposit of any other money in that account other than that of the Piotti trust.

■ *Count 9.* Theft of $3,142.59 from his client Betty Nelson. Betty Nelson, to whom defendant had loaned $500 from the Piotti trust money, (count 6) gave defendant on September 30, 1947, $4,000 to repay the $500 and for the payment of certain bills. Defendant paid only $325.41 in bills. All other bills he left unpaid. The money was expended partly over defendant's personal account, partly over the trust account. Defendant testified that he returned the $4,000 in November, 1947, and there was a supporting witness,

but Mrs. Nelson denied it and there is much evidence that in the first part of 1948 defendant took the position that he still owed Mrs. Nelson the $4,000. He could not produce the receipt he said Mrs. Nelson had given him.

■ *Count 10.* Theft of $2,500 from Betty Nelson on October 30, 1947. On October 21, 1947, Mrs. Nelson gave defendant a check for $2,500 to be loaned to Mr. and Mrs. Mouat on a first deed of trust. The Mouat property was encumbered. Defendant testified that he nevertheless made the loan and after some months received the money back, all without receipts. Mr. Mouat testified that he never received it. At any rate the money was not returned to Mrs. Nelson. Defendant testified that Mrs. Nelson had let him keep that money to take care of the loan, costs and fees she owed him. He contends that she owed him $500 loan, $500 costs and $1,500 fees. Mrs. Nelson denied all of this.

■ *Count 11.* Theft of $1,500 from his client Mrs. Murray on November 19, 1947. Under count 8 on September 2, 1947, defendant paid back from Piotti's money $3,500 of an amount of $6,700 received for Mrs. Murray. Prior to that date (April 15, 1947) he had returned her $1,500. There were also a few other small receipts and payments in that time. From September, 1947, to March, 1948, Mrs. Murray pressed defendant to get the remaining amount of approximately $1,700. On February 13, 1948, he had his secretary pay her $150 but had her sign a promissory note for it, not knowing the character of the paper, but thinking it was merely a receipt. Since then nothing was returned to her. Defendant contends that there could be no embezzlement as no demand to return the money was testified to, and that he, defendant, was entitled to the amount retained as fees; but the record contains ample evidence showing frequent demands made upon the defendant over a period of more than a year. It also appears that no agreement was made as to fees and no authority to retain the money for that purpose was given.

■ *Count 12.* Theft of $1,000 from W. A. Brechtel, a client, on December 23, 1947. Defendant had agreed in behalf of Brechtel and others to bring about the rezoning as business property of the district in which Brechtel and those others had business property for $1,500 cash and $1,000 "if and when the rezoning is accomplished." On December 23, 1947, he told Brechtel that the area had been rezoned and that they would

get their license in a few days. On these representations the final $1,000 was paid. The area was not rezoned. The count was tried as constituting obtaining money by false pretenses. Defendant argues that the check of $1,000 was not given by W. A. Brechtel, as alleged, but by his son, Harry A. Brechtel and that the indictment was not amended. But it appears that the check was drawn by the son on the father's request and it is a fair inference that it was the father's obligation. He denies that he told the Brechtels that the rezoning had taken place and argues that the further fee of $1,000 was at any rate due because of defendant's services in retarding the measures against the Brechtels so that they could continue their wholesale business for two years in a residential district. But defendant was not hired for that service and could not charge a fee without the consent or knowledge of his client.

The foregoing statement of the evidence is a sufficient answer to defendant's contentions that the several verdicts are not supported by substantial evidence. The testimony of the witnesses offered to prove those facts was clear and free from legal objection. Such denials as were made by the defendant were matters for the jury.

█ The first assignment of error charges prejudicial misconduct on the part of the trial judge in his questioning of defendant as a witness relating to the reasonableness of an attorney's fee in a proceeding to terminate a joint tenancy. It had been shown that a portion of the moneys which defendant had misappropriated from a client named Nelson was claimed by him as counsel fees in a suit to terminate a joint tenancy. The State endeavored to show that this is a simple proceeding and the court asked defendant if it was not the usual practice to fix such fee at one-third of the statutory probate fee. Defendant replied that such method was a guide but that he did not usually follow it. The court then asked defendant what he considered a reasonable fee for this service and defendant answered, "$250-$300." Then the court asked him if, using the probate method, such fee would not have been $148. Obviously an attorney charged with the embezzlement of his client's funds cannot claim the money as counsel fees without being questioned as to the reasonableness of the fee when the parties have not agreed upon the amount of the fee to be paid. That was all that the district attorney and the trial court sought to show here.

It is not necessary to treat this as a comment by the court on the facts. The trial judge and all counsel in the case knew

the nature of the proceeding to terminate a joint tenancy, and the method by which fees were fixed in that county. Since one of the questions for the jury was whether defendant had retained an excessive amount for that purpose it was proper for the court to see that the jury was informed of the common practice.

For this reason we do not discuss the effect of defendant's failure to assign misconduct, nor his highly technical objections to the instructions given the jury covering the incident. It is sufficient to quote the pertinent portion of the charge given on the court's own motion: "If the Court has at any time during the trial *asked any question*, made any ruling or used any language that has seemed to you to indicate the opinion of the Court as to any question of fact, you must not be influenced thereby, but must determine for yourselves all questions of fact, without regard to any opinion you may suppose the Court may have or entertain."

■ Appellant assigns as error the exhibition of a chart of the 12 alleged thefts, which had not been admitted in evidence. A photostatic copy of the chart is in the file. The use was objected to but permitted for purposes of illustration only with an instruction that it was not evidence. The principal objection is that the chart does not show that it is a diagram of the contentions of the prosecution and not of the proof, whereas the court asked, "the figures on the chart are taken from the facts in evidence?" to which question the district attorney answered affirmatively. There is no contention that such was not the fact. The objection relates especially to the last column entitled "Whose Money Used," a point strongly disputed. All parties and the jury knew that the chart was based on the State's evidence. It did not purport to state conceded facts or to determine the truth of the conflicting evidence. The jury was instructed that the chart itself is not evidence in the case. It was used for illustration of the argument only. This was both proper and nonprejudicial. "Counsel may illuminate his argument by illustrations which may be as various as the resources of his talents." (*People* v. *Kynette*, 15 Cal.2d 731, 757 [104 P.2d 794].)

■ Appellant complains of the court's refusal to allow him to appear as counsel in his own behalf during the selection of the jury. On motion of the defense before the opening statement of the prosecution appellant was permitted to participate as attorney throughout the trial. His argument on

this assignment is free from any citation of or reference to any authority. He states that the jury might have been prejudiced by the order, but gives no reason why that should be so. He was present throughout the selection of the jury and does not contend that he was denied the right to confer with or to advise his counsel. The record discloses that the appellant participated as counsel throughout the trial and made one of the arguments in his behalf. But the rule is that when a party is represented by counsel he is not entitled ''as a matter of right'' to be heard by himself—that it is a matter within the discretion of the trial court. (23 C.J.S. 317, and cases cited.) That rule is applicable here. The appellant has not given any reason indicating prejudice to him in the ruling and we find none.

■ The alleged misconduct of the district attorney in his oral argument was not accompanied by an assignment of error in the trial court. Nothing would be served by repeating the language complained of. It is sufficient to say that it was a condemnation of appellant's breach of the ethics of his profession as a lawyer, and not too intemperate under the facts of the case. His argument that he should have been treated throughout the trial, and in the argument to the jury, merely as an individual charged with grand theft is not persuasive. The facts proved disclosed that it was by reason of his position as a lawyer, and that alone, that he obtained the money from his clients. His defense rested almost entirely on his claim that he was entitled to keep the money in payment of attorney's fees. It was his case that put in issue his right, as a lawyer, to appropriate the various sums as attorney's fees. Under these circumstances the canons of ethics and the accepted practices of the legal profession became proper matters for argument to the jury.

■ The right of the district attorney in his argument to draw his conclusions from the facts in evidence cannot be denied. (*People* v. *McKenzie*, 12 Cal.App.2d 614-616 [55 P.2d 1200]; *People* v. *Eggers*, 30 Cal.2d 676, 693 [185 P.2d 1].) But the controlling factor in matters of this kind is that when the defendant believes that the district attorney has exceeded the proper limits in his argument an assignment of error should be made at the time in order that the trial court may instruct the jury if the argument is improper. The question whether the district attorney overstepped the bounds of propriety in his argument is largely within the discretion of the trial court. (*People* v. *Mayes*, 113 Cal. 618, 622 [45 P. 860];

*People* v. *Eggers, supra,* 693; *People* v. *Codina,* 30 Cal.2d 356, 362 [181 P.2d 881]; *People* v. *Fisher,* 86 Cal.App.2d 24, 32 [194 P.2d 116].) The latter case is closely in point. There the defendant was a Negro. He was charged with an assault with a deadly weapon upon two Negroes. The 12 jurors were Negroes. The district attorney referred to these circumstances in his argument and expressed the hope that the jurors would discharge their duties fairly notwithstanding the racial circumstances. The reviewing court held that the remarks were improper, but that, since no objection had been made, they were not grounds for reversal.

Both the Codina case and the Fisher case recognize the exception to this rule when the remarks are of such a nature that an admonition to disregard them would be ineffectual. This subject is so aptly treated in *People* v. *Berryman,* 6 Cal.2d 331, 337-338 [57 P.2d 136], that we quote at length a portion of the opinion since it is a complete answer to the point raised here: "The general rule regarding misconduct of the district attorney which tends to and is likely to result in prejudice to the defendant is that where no objection is made to such misconduct by the defendant, or where objection is made and the court sustains the objection and properly admonishes the jury, the misconduct claimed to be prejudicial to defendant's rights will not furnish grounds sufficient to justify the granting of a new trial or the reversal of the judgment. (8 Cal.Jur., sec. 603, p. 623, and cases there cited.) "There are two exceptions to this general rule. One is where the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict, a miscarriage of justice results requiring a reversal. (*People* v. *Fleming,* 166 Cal. 357, 381 [136 P. 291, Ann.Cas. 1915B 881].) The other exception is where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court. In such cases the misconduct will furnish ground for a reversal of the judgment, even where proper admonitions are given by the court. (*People* v. *MacDonald,* 167 Cal. 545, 551 [140 P. 256]; *People* v. *Derwae,* 155 Cal. 592, 597 [102 P. 266].)

"Appellant cannot possibly come within the first of these exceptions; that is, that the case against him is a close case and therefore the objectionable statement of the district attorney contributed materially to the verdict against him not-

withstanding the admonition of the court to the jury to disregard it. The evidence showed without a shadow of a doubt that the deceased Grant met his death as a result of the criminal act of someone, and points unerringly to the appellant as the perpetrator of the crime. In a case so overwhelmingly against the defendant, the objectionable remark of the district attorney could not have had any material weight with the jury even had they been disposed to violate the court's admonition. The evidence before us would have compelled the conviction of the defendant had the objectionable remark not been made. Neither do we think that appellant can bring the remark of the district attorney within the second exception; that is, that the statement was so inherently prejudicial to defendant's rights that the harmful results therefrom were not obviated and cured by the court's admonition.'' The court further cited with approval the following statement in *People* v. *Warr*, 22 Cal.App. 663, 670 [136 P. 304]: ''[I]t very seldom happens that a mere observation of an attorney, expressed during the heat of his oration, fastens itself with such tenacity upon the minds of the jurymen as not to be dislodged by a direct instruction from the trial judge.''

Two assignments of error are made in the order denying the motion for a new trial. The first relates to an assertion of newly discovered evidence. This relates to the charge of theft under count 10. The evidence at the trial was that Betty Nelson gave appellant $2,500 in cash to be loaned to Mouat on a first deed of trust. The property was encumbered and the loan could not be made. Appellant had testified that he had nevertheless given the money to Mouat and a few months later had received it back, all without receipts. On his motion for a new trial he claimed to have found a receipt from Mouat. But if he had produced such a receipt at the trial it would have availed him nothing; it would have merely added to the proof of chicanery surrounding the whole transaction. He had testified that Mrs. Nelson had ''let him keep'' the money for what she owed him, to wit, $500 for work on the loan, $500 for costs, and $1,500 attorney's fees. If he had put in evidence the receipt from Mouat the only controversy would have been whether he stole the money from Betty Nelson on October 21, 1947, or on October 30th of the same year. The motion for a new trial was properly denied on this ground.

The second ground urged relates to the complaint about instructions given and refused. His first assignment covers

the refusal to give his proposed instruction relating to the charge of obtaining money by false pretenses outlined in count 12. He states that the portion instructing that the crime "cannot be predicated upon a representation or a promise in the future" was not elsewhere covered. In this he is mistaken. The trial court instructed the jury on that subject fully and we quote but a part of the instruction: "A false pretense is defined to be such a fraudulent representation of an existing or past fact which is made by one who knows it not to be true or made recklessly and without information justifying a belief that it is true, and which is adapted to influence the person to whom it is made to part with something of value. The representation must be of a present or past fact, and not a mere expression of opinion or representation of an act to be performed in the future."

Appellant complains of the refusal to give his proposed instructions numbered 13 and 15 covering his defense that the moneys alleged to have been embezzled by him were lawfully retained as attorney's fees. Again he is mistaken in saying that the matter was not covered by instructions given. The jury was instructed: "The defendant has contended that certain sums of money received or retained by him were received or authorized by the owner thereof to be retained by him as attorney's fees. If from the evidence pertaining to any count or counts of the indictment you believe that the defendant was so authorized, or that there is a reasonable doubt as to whether or not any such sum was authorized to be received or retained by the defendant as an attorney's fee, you should vote to acquit the defendant upon any such count or counts."

Finally appellant lists, by number only, twelve proposed instructions which were not given as proposed. He does not claim that the subject matter was not fully covered by the instructions given, nor does he advance any reason why he was prejudiced by their rejection. In a case of this kind it is not sufficient to merely argue "error" without some attempt to show wherein the asserted error was prejudicial.

The judgments and the orders denying a new trial are affirmed.

Goodell, J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 4, 1950.