Filed 6/30/22  P. v. Trejo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C086916 |
| Plaintiff and Respondent, | (Super. Ct. No. CM040152) |
| v. | |
| SALVADOR TREJO, | |
| Defendant and Appellant. | |
| THE PEOPLE, | C086993 |
| Plaintiff and Respondent, | (Super. Ct. No. CM040151) |
| v. | |
| YONATAN ISSAK TESFAZGHI, | |
| Defendant and Appellant. | |

1

For their participation in a failed robbery, where one of their confederates was shot and killed, defendants Yonatan Issak Tesfazghi and Salvador Trejo were found guilty by a jury of multiple offenses including, murder, attempted home invasion robbery in concert, and burglary.

In this consolidated appeal, defendants raise several contentions challenging their murder convictions, including that the jury received an erroneous instruction on the natural and probable consequences doctrine. Defendants also contend their robbery convictions were unauthorized as the jury verdict forms did not reference "in concert," and punishment for the robbery must be stayed under Penal Code section 654. (Unspecified statutory section citations that follow are to the Penal Code unless otherwise stated.) Defendant Trejo independently contends his trial counsel rendered ineffective assistance of counsel by failing to object to the imposition of consecutive sentences for robbery and burglary; and his abstract of judgment must be corrected to reflect the sentence imposed. To these, we find merit as to the first and last contention.

Additionally, through supplemental briefs, defendants contend that Senate Bill No. 775 (2021-2022 Reg. Sess.) provides further grounds to challenge their murder convictions, and that remand is required for resentencing on their upper-term convictions, in light of Senate Bill No. 567 (2021-2022 Reg. Sess.). To these, we need not address the former as the murder conviction must be reversed based on instruction error. But as to the latter, remand is warranted.

We will therefore reverse the murder convictions and remand for resentencing on the upper-term counts. In all other respects, we affirm.

FACTS AND HISTORY OF THE PROCEEDINGS

A group of robbers, including defendants Tesfazghi and Trejo, attempted to rob the home of a family where marijuana was grown. During the attempt, one of the victims

of the robbery shot and killed one of the robbers.  At trial, numerous witnesses testified including several members of the victim family and several of the robbers.

## *The Victims' Testimony*

The mother of the victim family testified that she was serving lunch to her children, when she heard a car drive quickly up their driveway.  Looking out the window, she saw four people get out of the car, wearing masks.  One drew a gun.

She told her adult son (the shooter) that masked men with guns were coming.  The shooter told her to take the younger daughter to the bedroom.  The mother did, and from the bedroom she heard gunshots.

The shooter testified that he heard someone drive into the driveway very fast.  His mother then told him armed, masked men were outside.  He looked through the window and saw someone (the decedent) dressed in black draw a gun.

The shooter tried to lock the door to the house, but he couldn't get it closed.  He then ran to his parent's bedroom and got their revolver.  He came back to discover the decedent in the space between the kitchen and the living room.

The shooter testified that the decedent looked "shocked."  For a second, the decedent and shooter looked at each other.  As the shooter explained at trial:  "I see him making a move, like trying to lift up his gun, and that's when I pulled the trigger."  The shooter also answered "Correct" when the prosecutor sought to clarify:  "You saw his right hand move?"  "Correct."  "So you shot him?"  "Correct."

As the decedent fell, the decedent fired a shot that hit the ceiling.  The shooter then heard several gunshots coming from the kitchen, along with the sounds of chairs being trampled over.

The wife of the decedent testified to hearing a conversation between the decedent and defendant Tesfazghi, about robbing someone in Oroville. They intended to steal 200 pounds of marijuana and guns.

In two cars, the wife and the other robbers, including defendant Trejo, drove to Oroville. There, they drove past the victims' house several times before commencing the robbery. On a nearby street, defendant Tesfazghi, the decedent, and a third robber donned masks and gloves. The decedent and defendant Tesfazghi had guns; the third robber had a crowbar. Those three robbers and the wife then drove to the victims' house (defendant Trejo and another robber drove around the corner). Before he got out, the decedent told his wife that if she heard gunshots, she should try to leave.

The wife testified that she watched the decedent enter the house, followed by defendant Tesfazghi, then the robber with the crowbar. Seconds later she heard gunshots. Shortly thereafter, she picked up defendant Tesfazghi and the robber with the crowbar. Tesfazghi got in the driver's seat and eventually drove back home with the wife and several of the robbers. The wife later pleaded guilty to home invasion robbery, with a gun enhancement.

The robber with the crowbar testified that he had gone to the victims' back door, with the decedent in the lead. He then watched the decedent and defendant Tesfazghi go inside; he did not go inside himself. He heard three or four gunshots. He also saw defendant Tesfazghi raise and point a gun. He then ran away from the house.

*Jury Verdict and Sentencing*

The jury found both defendants Tesfazghi and Trejo guilty of murder (§ 187, subd. (a); count 1); attempted home invasion robbery in concert (§ 211; count 2); and first degree burglary (§ 459; count 3).

Separately, the jury found defendant Tesfazghi guilty of shooting at an inhabited dwelling (§ 246; count 4). It also found he had personally and intentionally discharged a firearm (§12022.53, subd. (c)); personally used a firearm (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a)); and had been armed with a firearm (§ 12022, subd. (a)(1)) as to counts 1 through 3. It further found there was a person present in the home as to the burglary count. And as to defendant Trejo, the jury found a principal had been armed with a firearm (§ 12022, subd. (a)(1)) for counts 1 through 3.

Defendant Tesfazghi was sentenced to a 15-year-to-life indeterminate term along with a 24-year, six-month determinate term: the four-year, six-month upper term for robbery, with a 20-year firearm enhancement; and a 15-year-to-life term for murder. Concurrent upper terms were imposed for the burglary and shooting into an inhabited dwelling counts. Various gun enhancements were also imposed and stayed.

Defendant Trejo was sentenced to a 15-year-to-life indeterminate term, along with a nine-year four-month determinate term: the six-year upper term for burglary, with a one-year firearm enhancement; a one-year four-month term (one third the middle) for robbery, with a one year firearm enhancement; and a 15-year-to-life term for murder.

## DISCUSSION

### I

### *Murder*

On appeal, defendants collectively raise six contentions challenging their murder convictions. We address only the first of those, as we find it has merit and warrants reversal of the murder convictions. For that contention, defendants argue the trial court erred in instructing the jury with a legally invalid theory of the natural and probable consequences doctrine.

5

A.     *Additional Background*

1.     *The prosecution request for a CALCRIM No. 402 instruction*

Prior to jury deliberation, the prosecution requested a number of jury instructions, including CALCRIM No. 402, which pertains to the natural and probable consequences doctrine. Attorneys for defendants objected with one adding, "I think it would be more confusing than beneficial to keep it in." The prosecutor responded that the instruction was necessary to explain parts of CALCRIM No. 561, provocative acts by an accomplice. Defense counsel countered that the requested instruction bled into felony murder, to which the prosecutor replied that the CALCRIM No. 402 instruction is "absolutely imperative, and to not give it I think would take a major, major argument out of my tool chest . . . ." He added that all along, "it's natural and probable consequences."

The trial court took the matter under submission, adding, "if it's just repeating an instruction that is given elsewhere, but it clarifies, I would give it. I tend to give more instructions than maybe we need to." The next morning the court announced it would instruct with a modified version of CALCRIM No. 402.

2.     *The jury instructions*

The trial court thereafter instructed the jury with a modified version of CALCRIM No. 402. In pertinent part it told the jury: "You must decide whether a defendant is guilty of either or both attempted home invasion robbery and/or first degree burglary with person present. If you find the defendant is guilty of this crime, you must then decide whether he is guilty of murder. [¶] Under certain circumstances, a person who's guilty of one crime may also be guilty of other crimes that were committed at the same time."

The instruction continued: "To prove that a defendant is guilty of murder, the People must prove that: [¶] 1. The defendant is guilty of either or both attempted home invasion robbery and first degree burglary with person present; [¶] 2. During the commission of the attempted home invasion robbery and/or first degree burglary with

6

person present *a third party killed* a principal or accomplice to the attempted home invasion robbery and/or first degree burglary with person present; [¶] And [¶] 3. Under all the circumstances, a reasonable person in the defendant's position would have known that death was a natural and probable consequence of the commission of the attempted home invasion robbery and/or first degree burglary person present."  (Italics added.)

For comparison, the form instruction provides in pertinent part:  "1. The defendant is guilty of _____ <insert target offense>; [¶] 2. During the commission of _____ <insert target offense> *a coparticipant* in that _____ <insert target offense> committed the crime of _____ <insert non-target offense>; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of _____<insert non-target offense> was a natural and probable consequence of the commission of the _____ <insert target offense>."  (CALCRIM No. 402, original italics omitted, italics added.)

The instruction also explained:  "A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.  In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence."

We note that two paragraphs later, the jury was told:  "To decide whether the crime of murder was committed, please refer to the separate instructions that I will give you on that crime."  The instruction immediately went on to say:  "The People allege that the defendant originally intended to aid and abet the commission of attempted home invasion robbery and first degree burglary with person present.  The defendant is guilty of murder if the People have proved that the defendant aided and abetted attempted home invasion robbery or first degree burglary, or both, and that murder was the natural and probable consequence of either attempted home invasion robbery and/or first degree burglary.  However, you do not need to agree on which of these two crimes the defendant aided and abetted."

7

The court went on to instruct on conspiracy, using CALCRIM No. 416.

Thereafter the court told the jury: "The next series of jury instructions relate to the charge in Count 1, which is homicide of murder." After, defining homicide, the court instructed on CALCRIM No. 561, explaining: "This is the provocative act by an accomplice instruction. [¶] . . . A person can be guilty of murder under the provocative act doctrine even if someone else did the actual killing. [¶] To prove that a defendant is guilty of murder under the provocative act doctrine, the People must prove . . . that: [¶] 1. The defendant was an accomplice of [the other robbers] in committing attempted home invasion robbery and first degree residential burglary with person present; [¶] 2. In attempting to commit a home invasion robbery and first degree residential burglary with person present either defendant and/or [the robber with a crowbar] intentionally did a provocative act; [¶] 3. The defendants knew that the natural and probable consequences of the provocative act were dangerous to human life, and then acted with conscious disregard for that life; [¶] 4. In response to the provocative act or acts [the shooter] killed [the decedent]; [¶] And [¶] 5. [The decedent's] death was the natural and probable consequence of the provocative act or acts."

To that, the jury was instructed: "In order to prove that [the decedent's] death was a natural and probable consequence of [the decedent, defendant Tesfazghi, and the robber with the crowbar's] provocative act, the People must prove that: [¶] 1. A reasonable person, [in the decedent, defendant Tesfazghi, and the robber with the crowbar's] position would have foreseen that there was a high probability that their act could begin a chain of events resulting in someone's death; [¶] 2. [The decedent, defendant Tesfazghi, and the robber with the crowbar's] act was a direct and substantial factor in causing [the decedent's] death; [¶] And [¶] 3. [The decedent's] death would not have happened if [the decedent, defendant Tesfazghi, and the robber with the crowbar] had not committed the provocative act."

The instruction went on to explain: "A provocative act is an act: [¶] 1. That goes beyond what is necessary to accomplish the home invasion robbery and first degree residential burglary with person present; [¶] And [¶] 2. Whose natural and probable consequences are dangerous to human life because there is a high probability that the act will provoke a deadly response."

The jury was also instructed that, "If you decide that the only provocative act that caused [the decedent's] death was committed by [the decedent], then the defendants are not guilty of [the decedent's] murder."

### 3. *Closing arguments*

During closing arguments, the prosecutor told the jury: "Robbery, burglary, plus provocative acts, plus natural and probable consequences, plus principal liability, equals murder." He explained: "[W]hen you go through the instructions, you go through the principal instructions, you go through the provocative act instructions, you go through the natural and probable consequences instructions, and what they'll tell you is first you've got to find them guilty of the predicate crimes . . . . Once you find the defendants guilty of that, then you move on to the provocative acts. Did they do something more than what was necessary to commit those offenses that provoked the violent and ultimately deadly reaction that they got?"

As to the provocative act, the prosecutor argued: "Where in the robbery instructions does it say that you need a facial covering? Where in the robbery instruction does it say you need a gun? Where in the robbery instruction does it say that you hit the place fast and you hit it hard? It doesn't. Those are the things that are over and above what are necessary. Those are the provocative acts. And whose natural, probable consequences are dangerous to human life, because there's a high probability the act will provoke a deadly response."

9

The prosecutor also argued the shooter had the right to defend himself: "So when somebody's robbing your house, and the law recognizes it, the natural, probable consequences are dangerous to human life, because there's a high probability that the act will provoke a deadly response." "What these guys did is so dangerous. It is so dangerous that it justified [the shooter] taking a life."

And anticipating an argument that the decedent performed the sole provocative act, the prosecutor argued the provocative act occurred when the mother heard the robbers' car pull up and saw the "masked gunmen getting out of the car and heading towards the house." "[T]hat justified [the shooter's] shooting. That's the provocative act right there, ladies and gentlemen. Those provocative acts were done, yes, by [the decedent], but also by [defendant Tesfazghi] and [the robber with the crowbar]. That is a provocative act right there that causes the effect, the ultimate effect, which is [the shooter] shooting [the decedent] and killing him. . . . None of this would have happened but for that fact. That's what starts it all."

B.    *Analysis*

1.    *Instruction error*

Defendants argue the modified CALCRIM No. 402 instruction was not only unnecessary, it effectively gave the jury a second theory of liability—a legally invalid one. Defendants note the natural and probable consequences doctrine does not apply where the decedent is an accomplice, and the actual killer is a victim of the target offense. (See *People v. Smith* (2014) 60 Cal.4th 603, 611 ["An aider and abettor is guilty not only of the intended, or target, crime but also of any other crime *a principal* in the target crime actually commits (the nontarget crime) that is a natural and probable consequence of the target crime," italics added].)

The People agree the natural and probable consequences doctrine is inapplicable where the intended victim kills an accomplice but argue reversal is not required for

10

several reasons. First, the contention is forfeited for failure to object to the instruction. Second "the given instruction did not assert that the jury could find [defendants] guilty under the natural and probable consequences theory of murder liability." Rather, the instruction simply explained the "natural and probable consequences," terminology used in CALCRIM No. 561. We agree with defendants.

We may quickly dispense with forfeiture. Both defense attorneys objected when CALCRIM No. 402 was proposed. And were that not sufficient, an instruction error affecting the substantial rights of the defendant requires no objection in order for it to be raised on appeal. (§ 1259; *People v. Hillhouse* (2002) 27 Cal.4th 469, 505-506 ["Even without an objection, a defendant may challenge on appeal an instruction that affects 'the substantial rights of the defendant' "]; *People v. Hudson* (2006) 38 Cal.4th 1002, 1012 ["Because the instruction given was wrong, the rule of forfeiture does not apply"].)

Neither can the instruction be excused as a mere clarification of CALCRIM No. 561. While the instruction defined natural and probable consequences, it also directed the jury (after finding either burglary or robbery), to "decide whether [each defendant] is guilty of murder." It then enumerated three elements the People must prove in order "[t]o prove that a defendant is guilty of murder . . . ." And as the parties agree, those elements constituted an invalid theory of natural and probable consequences murder liability, allowing a conviction for a third party's offense based solely on the natural and probable consequences of the target offense.

We therefore conclude the trial court erred in instructing the jury with the modified CALCRIM No. 402.

### 2. *Prejudice*

As to prejudice, the parties disagree as to the applicable standard. Defendants maintain reversal is required unless the record demonstrates beyond a reasonable doubt that the jury based its verdict on a valid ground. The People maintain the reasonable

11

probability standard applies, as the instruction was merely an abstract principle not pertinent to the case. Defendants are correct.

As is the case here, "[w]hen the jury is 'misinstructed on an element of the offense . . . reversal . . . is required unless we are able to conclude that the error was harmless beyond a reasonable doubt.' " (*People v. Wilkins* (2013) 56 Cal.4th 333, 348.) Doing so, "we consider whether 'it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " (*People v. Chavez* (2004) 118 Cal.App.4th 379, 387.) We "must conclude, beyond a reasonable doubt, that the jury based its verdict on a legally valid theory . . . ." (*People v. Chun* (2009) 45 Cal.4th 1172, 1203.)

Here, the People offer several arguments as to why the jury did not rely on the modified CALCRIM No. 402 instruction. The People point to the trial court's instruction that, "Some of these instructions may not apply depending on your findings about the facts of the case. . . . After you have decided what the facts are, follow the instructions that do apply to the facts as you find them," and argue if the jury found the instruction inapplicable, it would have ignored it.

But the only portion of the instruction indicating it might not apply was the admonition that the defendant must first be found guilty of robbery or burglary: "If you find the defendant is guilty of this crime, you must then decide whether he is guilty of murder." Nothing else suggested some or all of the instruction might be inapplicable or could be ignored.

Indeed, to a lay juror, the modified instruction was all too applicable. It provided a direct and seemingly unassailable path to a guilty verdict for murder: the jury need only find that during the robbery or burglary, a principal or accomplice was killed, and it was reasonable for a defendant to know death was a natural and probable consequence of the robbery or burglary. Many of these elements were in little dispute by the evidence.

The People also argue that any confusion was eliminated by the prosecution's closing argument, which repeatedly argued defendants were guilty under the provocative

12

acts doctrine. But the prosecutor's focus on provocative acts was in conflict with the direct path provided in the modified CALCRIM No. 402 instruction. And the jury had been instructed to follow the court's instructions if a conflict arises: "If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."

And most problematically, the circumstances do not engender confidence that the erroneous instruction played no role in the verdict. With the provocative acts theory, the jury was instructed that if the only provocative act causing the death was committed by the decedent, then the defendants are not guilty of murder. Arguably, that may have been the case. The shooter testified that the reason he shot the decedent was because he saw the decedent raise his gun: "I see him making a move, like trying to lift up his gun, and that's when I pulled the trigger." The prosecutor confirmed: "And you saw his right hand move?" "Correct." "So you shot him?" "Correct."

With the modified CALCRIM No. 402 instruction, however, the jury need only conclude the shooting was a natural and probable consequence of an attempted home invasion robbery or burglary. Thus, it provided a far simpler path to a guilty verdict than the prosecution's theory. (Cf. *People v. Powell* (2021) 63 Cal.App.5th 689, 717 [finding instruction harmless where "[t]here was simply no reason for the jury to deviate from the prosecutor's suggested path and find defendant guilty based on implied malice, a far more difficult route to a second degree murder verdict than the natural and probable consequences doctrine"].)

Under these circumstances, we cannot conclude beyond a reasonable doubt that the jury's verdict was based on a valid theory. And even under the standard urged by the People, we could comfortably find a reasonable probability that the jury applied an invalid legal theory based on the erroneous instruction. We will therefore reverse

13

defendants Tesfazghi and Trejo's murder convictions.[1]  We, accordingly, do not address defendants' additional contentions challenging those convictions, beyond addressing the following two points.

Defendant Tesfazghi argues the prosecution should not be permitted to retry the murder charges because the only provocative act was done by the decedent.  We disagree. While we find the record does not provide sufficient certainty that the jury relied on a valid theory, at the same time we cannot say that on this record, the jury was precluded from finding a provocative act satisfying the doctrine.

Additionally, defendant Tesfazghi, while acknowledging this court is bound by stare decisis, announces his intention to ask the Supreme Court to re-examine and abrogate the provocative acts doctrine.  He is correct as to stare decisis, and it appears he has preserved the issue for a further appeal.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

II

*Robbery in Concert*

Defendants next contend their convictions for attempted home invasion robbery in concert were unauthorized because the jury found only robbery, not "robbery in concert." They reason that because the jury verdict forms failed to reference "in concert," there was no jury finding that the robbery was committed while they were acting in concert with two or more individuals within the meaning of section 213.

The People respond that because robbery in concert was charged in count 2 and the jury was instructed with CALCRIM No. 1601 on attempted home invasion robbery in concert, the in concert allegation was sufficiently pleaded and proven.

---

[1]     Doing so, we do not address the contention raised in defendants' supplemental briefs challenging their murder convictions in light of Senate Bill No. 775.

14

We agree with the People.

A.     *Additional Background*

For both defendants, the jury forms, under the caption "Verdict Count 2" provided:  "We, the jury . . . find the defendant . . . who has been charged with the crime of Attempted Home Invasion Robbery, a violation of Section 211 of the Penal Code, a Felony, . . ."  Guilty was checked on both forms.

As reflected in the amended information, defendants were charged in count 2 with "attempted home invasion robbery."  It was also alleged that, "pursuant to Penal Code section 213(a)(1)(A), as to Count(s) 1, 2, & 3 that the above offense was committed by the defendant(s) who voluntarily acted in concert and entered a structure described in that section."

Before jury deliberation, the jury was instructed several times that, "[t]he defendants are charged in Count 2 with attempted home invasion robbery in concert." With CALCRIM No. 1601, the jury was instructed:  "The defendants are charged in Count 2 with robbery by acting in concert with [several named robbers, including the decedent, the wife, and the robber with the crowbar] in violation of Penal Code section 213(a)(1)(A)."  The instruction went on to explain that the People must prove, inter alia, that "the defendant voluntarily acted with two or more other people who also committed or aided and abetted the commission of the robbery . . . ."

During closing arguments, both attorneys for the defendants conceded the robbery and burglary counts.  One explained, "I would concede that there is ample evidence from which you could find my client guilty of attempted home invasion by accomplice liability, the robbery, the burglary . . . ."  The other similarly explained, "I'm going to concede to you that the elements of the attempted home invasion robbery, first degree burglary, those have been proven to you by proof beyond a reasonable doubt."

15

B.    *Analysis*

Section 213, subdivision (a)(1)(A), robbery in concert operates as a sentence enhancement and therefore must be pleaded or proven beyond a reasonable doubt.  (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 482.)

At the same time, " '[t]echnical defects in a verdict may be disregarded if the jury's intent to convict of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice.' " (*People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272.)  To that end, " ' " '[a] verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court.' " ' " (*Ibid.*)  "No particular form of verdict is required, so long as it clearly indicates the intention of the jury to find the defendant guilty of the identical offense with which he is charged." (*People v. Fisher* (1948) 86 Cal.App.2d 24, 31.)  A verdict "is sufficient if it finds him guilty by reference to a specified count contained in the information." (*Ibid.*)

Accordingly, where a challenge is directed at the verdict form, our "inquiry is confined to determining beyond any reasonable doubt whether the jury *did* find [the disputed finding] and whether it intended the verdict it returned to reflect that determination." (*People v. Coelho* (2001) 89 Cal.App.4th 861, 877, original italics.)

Here, we are satisfied beyond a reasonable doubt that the jury found a robbery in concert.  While the verdict forms failed to include the phase, "in concert," the forms made clear a guilty verdict pertained to count 2.  And the jury was repeatedly and consistently instructed that count 2 pertained to a robbery in concert.  We further note that the robbery count was conceded by both defense counsel, and nothing in the record tended to support a finding of a robbery that was not in concert.

16

Under the circumstances, we find the jury's intent to return a guilty verdict for attempted home invasion robbery in concert unmistakably clear and that defendants suffered no prejudice.

## III

### *Section 654*

Defendants next contend punishment for their robbery convictions must be stayed under section 654 because both offenses were incident to one objective: to rob the victims of their marijuana. The People respond, inter alia, that separate punishment is supported by the multiple victim exception to section 654. We again agree with the People.

We note that defendants also contend that punishment for both their robbery and burglary convictions must be stayed, under section 654, as they were the target felonies used to convict on the murder count. Having determined the murder conviction must be reversed, we do not reach that contention.

A.      *Additional Background*

The probation report, prepared for sentencing, noted that section 654 does not apply to crimes of violence against multiple victims, and while counts 2 and 3 arose from the same course of conduct, they were alleged to involve different victims. In the count 2 robbery the shooter was threatened, while in count 3 the home of the entire victim family was burglarized.

At sentencing, defense counsel asked the trial court to stay punishment for burglary under section 654, arguing the home invasion robbery and burglary shared the same objective. The court declined, finding "each of those charges consist of separate elements and are distinguishable factually and by time."

B.    *Analysis*

Though a person may be convicted of more than one crime for the same act, section 654 proscribes multiple punishments for the same act.  (§§ 654, 954; *People v. Correa* (2012) 54 Cal.4th 331, 337 (*Correa*).)  An " 'act' " can include a " ' "course of conduct." ' "  (*Correa,* at p. 335.)  But a course of conduct causing multiple offenses is divisible—and subject to separate punishment—if the defendant entertained multiple objectives, independent of and not merely incidental to each other.  (*Correa* at pp. 335-336; *People v. Liu* (1996) 46 Cal.App.4th 1119, 1134.)

Here, the burglary and attempted robbery were both parts of a single course of conduct.  And the record supports only one objective for them both:  to deprive the victims of the marijuana and guns.  (See *People v. Green* (1985) 166 Cal.App.3d 514, 518 ["section 654 precludes punishment for both burglary and robbery when the burglary was incident to the objective of robbing the victim"].)

But another exception exists.  Multiple punishment is not proscribed, if "the defendant has engaged in an act of violence against two or more people . . . ."  (*People v. Newman* (2015) 238 Cal.App.4th 103, 112; see also *People v. Felix* (2009) 172 Cal.App.4th 1618, 1630–1631 ["There is a multiple victim exception to Penal Code section 654 which allows separate punishment for each crime of violence against a different victim, even though all crimes are part of an indivisible course of conduct with a single principal objective"].)

And here, the robbery and burglary were perpetrated against different victims.  The robbery, as alleged in the amended information, was perpetrated against the shooter victim, while the burglary was perpetrated against the entire victim family.

Further, robbery is a violent crime.  (*People v. Deloza* (1998) 18 Cal.4th 585, 592 [" 'Robbery is violent conduct warranting separate punishment for the injury inflicted on each robbery victim' "].)  And while burglary, " 'standing alone is not,' " "where the

18

burglary has been committed in conjunction with an act of violence that qualified for treatment as an enhancement, the multiple-victim exception can be satisfied." (*People v. Hall* (2000) 83 Cal.App.4th 1084, 1090-1091, disapproved on another ground in *Correa, supra*, 54 Cal.4th at pp. 343-344.) As one court concludes, "any crime involving the 'use' of a firearm should be deemed violent for this purpose." (*People v. Centers* (1999) 73 Cal.App.4th 84, 99.)

Here, the burglary involved storming the victims' home by two armed robbers who together fired multiple shots in the home while it was occupied by the victims. Under these circumstances, we are satisfied that the burglary was a violent crime for purposes of the multiple victim exception.

Defendants, nevertheless, argue the multiple victim exception cannot apply here because both counts 2 and 3 named the shooter as the victim and therefore did not name different victims. Defendants, however, provide no authority to support this proposition. And in fact, our Supreme Court in *Miller* included a footnote that even if the robbery and burglary counts there alleged an overlapping victim, it would not preclude multiple punishment, because "each crime would involve at least one different victim." (*People v. Miller* (1977) 18 Cal.3d 873, 886, fn. 11.) Indeed, this is consistent with section 654's purpose of ensuring punishment commensurate with criminal liability. (*Correa, supra*, 54 Cal.4d at p. 341.) It would run counter to that purpose if commensurate multiple punishment could be escaped merely because an overlapping victim was named on counts where multiple victims were alleged. (See also *People v. Centers, supra,* 73 Cal.App.4th at p. 101 ["We know of no case in which the court declined to apply the multiple victim exception simply because the victims had not been named in the information"].)

We therefore conclude multiple punishment for robbery and burglary is supported by an implied finding of multiple violent acts perpetrated against different victims.

*Ineffective Assistance of Counsel*

Defendant Trejo contends his trial counsel rendered ineffective assistance in failing to object to the imposition of consecutive sentence for his burglary and robbery convictions. He points to the trial court's statement while sentencing on the count 2 robbery conviction: "The Court has imposed a consecutive sentence by reason of the separate nature of the offense committed." Trejo argues that his offenses were in fact committed during the same incident and were all part of the same objective. Therefore the relevant California Rules of Court, rule 4.425 factor ("The crimes and their objectives were predominantly independent of each other") weighed in favor of concurrent sentences. He maintains that it is reasonably probable that had trial counsel alerted the court to this fact, the court would have imposed concurrent sentences for robbery and burglary.

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 691-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) But we need not determine if counsel's performance was deficient before considering prejudice. (*People v. Holt* (1997) 15 Cal.4th 619, 703.) To show prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Ledesma* at pp. 217–218). " 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . .' " (*Id*. at p. 217.)

Here, defendant has not shown prejudice. As discussed, the robbery and burglary involved crimes of violence perpetrated against multiple victims. This too may form the basis for consecutive terms. (Cal. Rules of Court, rule 4.425(a) ["The crimes involved

separate acts of violence or threats of violence"]; *People v. Chacon* (1995) 37 Cal.App.4th 52, 67 [trial court did not abuse its discretion in imposing consecutive sentence where crimes involved separate acts of violence or threats of violence against separate victims].) And given the nature of the separate acts of violence, we do not conclude that there is a reasonable probability of a different result had counsel objected.

V

*Senate Bill No. 567*

In supplemental briefs, defendants contend that remand is required for resentencing of their upper-term counts, in light of Senate Bill No. 567. The People agree, and so do we.

While this appeal was pending, the Governor signed Senate Bill No. 567 (2021-2022 Reg. Sess.); (Stats. 2021, ch. 731), effective January 1, 2022, which among other things, limits the trial court's ability to impose an upper term sentence unless aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or by the court in a court trial. (§ 1170, subd. (b)(1), (2), added by Stats. 2021, ch. 731, § 1.3.) An exception exists for evidence of prior convictions established by certified records of conviction, which need not be submitted to a jury. (§ 1170, subd. (b)(3), added by Stats. 2021, ch. 731, § 1.3.)

In defendant Tesfazghi's case, upper terms were imposed for robbery, burglary, and shooting into an inhabited dwelling. In defendant Trejo's case, an upper term was imposed for burglary.

As the parties agree, it does not appear that the Legislature intended this amendment to apply prospectively only. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308 [" 'The Estrada rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences

21

that are final and sentences that are not' "].) We therefore conclude Senate Bill No. 567 applies retroactively to defendants, and we must order resentencing as to the upper-term counts.

## VI

### *Abstract of Judgment*

Finally, defendant Trejo contends his abstract of judgment must be corrected to reflect his sentence. He notes that the abstract conflates counts 2 and 3. The People concede error, and while we agree, our remand for resentencing renders this a moot point.

### DISPOSITION

For both defendants Tesfazghi and Trejo, the judgment is reversed and remanded for a new trial on count 1, murder, as well as resentencing for all counts wherein an upper term was imposed. In all other respects, we affirm the judgments.

_____
HULL, J.

We concur:

_____
ROBIE, Acting P.J.

_____
HOCH, J.

22